IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD WILK, | ) | Case No. 5:04CV1625 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Judge Ann Aldrich |
| | ) | |
| THE VILLAGE OF REMINDERVILLE, et al., | ) ) | |
| Defendants. | ) | MEMORANDUM AND ORDER |

This is a civil rights case in which plaintiff Richard Wilk ("Wilk"), former police chief for the Village of Reminderville, seeks relief under 42 U.S.C § 1983 for alleged violations of his constitutional rights, including his right to freedom from deprivations of liberty and property without due process of law, his right to equal protection, and various privacy rights. Wilk also advances state law claims for defamation and malicious prosecution. Wilk names as defendants the Village of Reminderville, including Sam Alonso, its Mayor, six members of the Village Council, and Ken Myers, an attorney appointed as special counsel to Mayor Sam Alonso (collectively, "the Village"). Now before the court is a motion to dismiss for failure to state a claim filed by the Village (Docket No. 11).  For the following reasons, the court grants this motion and dismisses Wilk's complaint.

## I. Background

Wilk acted as Police Chief in Reminderville until May 6, 2002, when he was placed on administrative leave. Wilk did not return to his position after May 6, and he was officially terminated some time thereafter (though his complaint does not give an exact date). Wilk's

placement on leave occurred as a result of allegations that he was illegally holding a position at Six Flags Amusement Park while serving as Police Chief.

In addition to placing Wilk on leave, Mayor Alonso enlisted the services of the Summit County Sheriff's Department to determine whether Wilk was guilty of any criminal "misfeasance, malfeasance, or non-feasance." The Sheriff's Department conducted an investigation of the allegations and submitted a report to the Summit County Prosecutor's office for review.

On November 5, 2002, the Chief Counsel of the Summit County Criminal Division decided that the case should not proceed to a grand jury because probable cause sufficient to find that a crime had been committed did not exist. Wilk then made requests to the Village to be reinstated as police chief. On November 25, 2002, Wilk followed these requests with a petition for a writ of mandamus. The Village retained special counsel to defend the mandamus action and to separately prepare charges against Wilk. The Village also commenced its own investigation of Wilk.

On August 13, 2003, Wilk was served with documents detailing 29 "administrative charges" against him, including: falsification of records; misappropriation of state and federal drug fund money; improper use of police commissions; misuse of licensed computer software; theft of computer equipment, police radios, and cash; and improper sale of Village cars. An administrative hearing on the matter was held on August 26, 2003, after which the Village issued its final decision terminating Wilk.

Wilk initially appealed this decision to the Summit County Court of Common Pleas, but subsequently dismissed his appeal. Wilk was indicted for theft in office in May 2003, and acquitted of that charge on November 19, 2003.

## II. Discussion

In analyzing a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), a court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Andrews v. State of Ohio*, 104 F.3d 803 (6th Cir. 1997), quoting *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir. 1993).  The weight of the evidence and the credibility of witnesses generally are not factors to be considered when resolving a motion to dismiss; rather, a court "should deny the motion unless it is clear that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief."  *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995) (citation omitted).

Wilk claims that the Village interfered with the exercise of his due process rights by failing to provide him a hearing before an impartial tribunal, and by making stigmatizing allegations against him in public.  He also claims that the Village violated his right to equal protection under the law by "selectively and vindictively" charging him with illegal conduct, and violated his right to privacy by searching his office, desk, filing cabinets and mail.

**A. Due Process**

The due process clause of the Fourteenth Amendment requires that "state action, whether through one agency or another, be consistent with the fundamental principles of liberty and justice which lie at the base of our civil and political institutions and not infrequently are designated as the law of the land."  *Herbert v. Louisiana*, 272 U.S. 312, 316-317 (1926); *see also Burks v. Egeler*, 512 F.2d 221, 226 (6th Cir. 1975).

Termination of village officers such as Wilk is governed by § 737.171 of the Ohio Revised Code, which states in pertinent part:

> if a mayor of a village has reason to believe that a duly appointed marshal of the village has been guilty of incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, or any other acts of misfeasance, malfeasance, or nonfeasance in the performance of the marshal's official duty, the mayor shall file with the legislative authority of the village written charges against that person setting forth in detail the reason for the charges, and immediately shall serve a true copy of the charges upon the person against whom they are made.

*Id*. The statute also provides for the grant of a hearing, at which the suspected marshal may appear (alone or with counsel), examine all witnesses, and answer all charges against him. If he is indeed removed from office, the statute gives the accused the right to appeal to the court of common pleas of the county in which the village/employer is situated.

Assuming Wilk possessed a valid property interest in his employment as police chief, these provisions are instructive for evaluating his claim that he was denied said property without due process of law. The court will conduct this inquiry by examining Wilk's challenges to the pre-termination and post-termination hearings he was afforded.

1. <u>Pre-Termination Hearing</u>

In *Cleveland Bd. Ed. v. Loudermill*, 470 U.S. 532 (1985), the United States Supreme Court held that an employee with a property interest in his employment must be afforded "some kind of hearing" before he may be discharged. *Id*. at 542. Following this standard in *Local 4501, Communications Workers of America v. Ohio State Univ.,* 550 N.E.2d 164 (Ohio 1990), the Ohio Supreme Court explained that "such hearing need not be elaborate, but must afford the employee notice and the opportunity to have an explanation of the employer's charges and evidence against him, and an opportunity to present his side of the story." *Id*.

Wilk concedes that a pre-termination hearing was held in his case, but claims the hearing was biased in favor of the Village. This claim is inapposite, as an employee does not have a right to a neutral and impartial decision-maker at the pre-termination stage. *See Farhat v. Jopke*, 370 F.3d 580, 597 (6th Cir. 2004)(affirming grant of summary judgment to public employer). A reasonable pre-termination hearing need only provide an initial opportunity to determine whether there exists reasonable grounds under which the employee may be terminated. "It is the post-termination proceeding where bias and corruption are ferreted out." *Id.*

2. Post-Deprivation Hearing

It is not surprising, then, that Wilk bases the bulk of his due process claim on his assertion that the Village denied him the opportunity for a post-termination proceeding where he would have the chance to "ferret out the bias, pretext, deception, and corruption" of the Village. In accordance with O.R.C. § 737.171, Wilk appealed the decision to terminate him to the Summit County Common Pleas Court. Wilk's appeal for *de novo* review by the county court was denied. Wilk then withdrew his appeal.

Wilk now relies upon *Wolf v. City of Cleveland*, 2003 Ohio 3261, 2003 Ohio App. LEXIS 2918, (Oh. Ct. App. 2003), to support his contention that a court is required to conduct a *de novo* review of proceedings held before a civil service commission whenever a police officer is removed from his or her employment. The Village counters that the *Wolf* holding applies only to appeals from civil service commission decisions under O.R.C. § 124.34, and therefore has no bearing on the review of Wilk's termination under O.R.C. § 737.171.

This court need not consider the proper standard of review to be applied in all such cases, as it is clear from the record that the application of a deferential standard was not dispositive of

-5-

Wilk's case. His post-termination appeal did not conclude via the adverse application of an unfavorable standard, but rather by means of Wilk's voluntary dismissal. When an employee chooses not to participate in post-termination proceedings, he is considered to have waived his due process challenge to the fairness of such proceedings. *See Farhat*, 370 F.3d at 597.

### 3. Liberty Interests

Wilk also claims that he was subjected to a deprivation of his "liberty interest(s)" without the benefit of due process. "A person's reputation, good name, honor and integrity are among the liberty interests protected by the due process clause of the Fourteenth Amendment." *Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir. 2002), quoting *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir. 1989). In *McManamon v. Charter Township of Redford*, No. 99-2144, 2000 U.S. App. LEXIS 33873 (6th Cir. Dec. 19, 2000), the Sixth Circuit outlined the elements of a successful claim for violation of such a liberty interest, in the context of a public employee's termination.

> First, the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment. Second, a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance. ... A moral stigma such as immorality or dishonesty is required to show a deprivation of liberty. Third, the stigmatizing charges must be made public; fourth, the plaintiff must claim that the charges made against him were false; and fifth, the public dissemination must have been voluntary. Finally, the plaintiff must request a name-clearing hearing.

*Id*. at *20 (citations omitted).

The Circuit has made it clear that establishment of the first five elements merely entitles an aggrieved employee to the scheduling of a name-clearing hearing. Successful pursuit of a due process claim then requires the employee to request such a hearing, and to have that request denied. *See, e.g., Chaney v. Vill. of Potsdam,* 105 F. App'x. 18, 21 (6th Cir. 2004); *Brown v. City of Niota,*

*Tenn*., 214 F.3d 718, 723 (6th Cir. 2000); *Ludwig v. Bd. of Trustees of Ferris State Univ*., 123 F.3d 404, 411 (6th Cir. 1997) .

Wilk claims that the allegedly stigmatizing comments giving rise to his claim were made during his pre-termination hearing, a juncture whose timing denied him the opportunity to request a separate name-clearing hearing. Wilk also claims that his appeal to the common pleas court was made in part for the purpose of clearing his name. When the common pleas court denied his request for *de novo* review, Wilk contends that he was also denied the opportunity to clear his name.

It is clear from the court's review of the above cases that a plaintiff's seeking relief in state and federal courts is not sufficiently akin to a request for a name-clearing hearing from the state employer to defeat a motion for dismissal. The Sixth Circuit has routinely held that the right to recover under these circumstances stems from the specific denial of a forum in which to refute charges inflicted by state officers. Since Wilk neither requested such a name-clearing hearing, and thus was not denied one, his claim for violation of his liberty interest must fail.

4. "Substantive Due Process"

Wilk also brings a "substantive due process" claim, based on his allegation that while acting under color of state law, the Village's "arbitrary and capricious" conduct deprived him of his interest in continued employment. Substantive due process reaches only those decisions affecting constitutionally protected "fundamental rights" of an employee, such as those protected under the Bill of Rights. *Dohner v. Neff,* 240 F.Supp. 2d 692, 703 (N.D. Ohio 2002). The test that is frequently used by courts to determine whether a plaintiff's substantive due process rights have been violated is to determine whether the state actor's conduct was such as to "shock the conscience." *Dohner* at

703, quoting *County of Sacramento v. Lewis*, 523 U.S. 833 (1998).  Conscience-shocking conduct must be so egregious as to violate society's idea of decency and fair play.  *Id.* at 847.

Having found no constitutional infirmities in the process afforded Wilk both pre- and post-termination, the court finds no independent grounds for a ruling that the Village's treatment of him at any stage might be said to "shock the conscience" or to violate society's idea of decency and fair play. Accordingly, the court finds that all of Wilk's due process claims must be dismissed.

**B. Equal Protection**

To state a claim for a constitutional violation under the equal protection clause of the Fourteenth Amendment, "a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Herron v. Harrison*, 203 F.3d 410, 417 (6th Cir. 2000), quoting *Henry v.Metropolitan Sewer Dist*. 922 F.2d 332, 341 (6th Cir. 1990).

Wilk alleges that in the charges against him, the Village "selectively and vindictively" singled him out and charged him with conduct that was not supported by competent evidence. Wilk does not, however, make any claim to membership in a protected class. His equal protection claim is therefore dismissed.

**C. Privacy Rights**

Wilk also claims a violation of his constitutional rights as a result of the Village's search of his personal (office) property. This claim appears to be akin to one for a violation of the Fourth Amendment, under which an unjustified search occurs "when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).

In *O'Connor v. Ortega*, 480 U.S. 709 (1987), the Supreme Court addressed similar facts, holding that

> public employer intrusions on the constitutionally protected privacy interest of government employees for non-investigatory, work-related purposes, as well as for investigations of work-related misconduct, should be judged by the standard of reasonableness under all the circumstances. Under this reasonableness standard, both the inception and the scope of the intrusion must be reasonable[.]

*Id*. at 725-26. The Court then explained its two-part test for reasonableness, under which a court must evaluate (1) whether the employer's action was justified at its inception; and (2) whether the search as actually conducted "was reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 726 (citations omitted).

The court finds that the Village was justified as a matter of law in searching Wilk's office, desk drawers, personal calendars and mail. The invasion of Wilk's office was justified by the serious nature of the charges levied against him, and the search of these particular items was reasonably related to the Village's desire to both investigate the alleged theft and to support continued functioning of the police force in Wilk's absence. In accordance with the *O'Connor* test, Wilk's claim for violation of his right to privacy must therefore fail.

### III. Conclusion

For the foregoing reasons, the court finds that Wilk has not stated a claim upon which relief may be granted under 42 U.S.C. § 1983. The court therefore grants the Village's motion to dismiss.

Having resolved the federal constitutional claims, the Court declines to exercise supplemental jurisdiction over Wilk's state law claims. These claims are dismissed without prejudice.

This order is final and appealable.

IT IS SO ORDERED.

s/Ann Aldrich<br>
ANN ALDRICH<br>
UNITED STATES DISTRICT JUDGE

Dated: February 15, 2006